## Case No. 2,838.
### CLARK v. UNITED STATES.
[3 Wash. C. C. 101.][1]

Circuit Court, D. Pennsylvania. Oct. Term, 1811.

NON-INTERCOURSE ACT—TRANSFER OF SOVEREIGNTY—ST. DOMINGO.

1. The island of St. Domingo is a dependence of France, and within the act of congress of March 1, 1809 [2 Stat. 528].

2. It is for the government of the United States to decide, whether this island is independent or not; and until such a declaration is made, or France shall relinquish her claim, the courts of the United States must consider the ancient state of things as remaining unaltered, and the sovereign power of France over the country as still existing.

[Cited in The Hornet, Case No. 6,705.]

3. The surrender of a town to an invading enemy, does not divest the sovereign of more country than that which has submitted to the conqueror. If the whole island of St. Domingo had been conquered by the British, and given up to the blacks, the right of France would have revived; since the conqueror gains nothing but the temporary right of possession and government, until a pacification; and cannot, in the mean time, impair, by any transfer, the rights of the former sovereign.

Appeal [from the district court of the United States for the district of Pennsylvania].

WASHINGTON, Circuit Justice, delivered the opinion of the court. These cases arise under an act of congress, passed on the 1st of March, 1809, which prohibits the importation into the United States, of any goods, &c., from any place situated in France or Great Britain, or in any of the colonies or dependencies of either; and the question is, whether the island of St. Domingo, in October 1809, when the importation charged in this information was made, was a colony or dependence of France, or not?

On the part of the United States, it is contended, that in point of fact, this island, at the time above mentioned, was, and still continues, a dependence of France; and that even if this were not the case, according to the principles of the law of nations, still, it is not for this, or any other court, to decide on the ground of her independence, until the government of the United States has so declared, or France has relinquished her claim.

On the part of the claimant, it was insisted, that the people of this island had not only declared themselves independent, but have thus far shown themselves able to maintain it; having, ever since the declaration, exercised without interruption from the armed force of France, the rights and powers of self-government, under a constitution framed by themselves. That neutral nations are bound, by the law which ought to govern nations, to consider St. Domingo as a government separate from, and independent of

[1] [Originally published from the MSS. of Hon. Bushrod Washington. Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

France; and the war, if any there be between them, as being equally just on both sides. That the law of nations, is as much obligatory, as a rule of decision, upon courts, as of conduct on sovereigns; and consequently, in all questions coming before these tribunals, where the relations between the dismembered part and the mother country, are incidentally brought in question, and must be decided, the former must be considered equal in all respects with the latter, although the sovereign power may have made no declaration upon the subject. As an illustration of these principles, the case of a seizure and condemnation in a court of the new government, as prize, or for breach of a municipal law of that government, was mentioned, which a foreign court would clearly be bound by the law of nations to consider as valid. These arguments, on the side of the appellants, had great weight with us, when they were urged; and we must candidly confess, that they lost nothing by the examination which we have given the subject during the vacation. But they seem to us to be so completely borne down by the opinion of the supreme court, pronounced in the case of Rose v. Himely [2 Cranch (6 U. S.) 241], that it is impossible, we think, to sustain them, without disregarding principles most clearly expressed in that opinion. That was the case of an American vessel, which, after trading with the brigands of St. Domingo, as they were termed, sailed with a cargo; and when at the distance of ten leagues from the island, on the high seas, she was captured by a French privateer, on the 23d of February 1804, was conducted into the island of Cuba, was sold, and afterwards condemned, in July 1804, at St. Domingo, under an arret of the Captain-General Farrand, issued on the 1st of March, 1804.

The chief justice, in delivering the opinion of the court, whilst considering the particular character in which the court at St. Domingo acted, in condemning this vessel and cargo, says, "the relative situation of St. Domingo and France, must necessarily be considered." He then proceeds to lay it down, that "St. Domingo had declared herself independent of France, and was by arms asserting her sovereignty;—a war de facto existed. Vattel, who has been quoted to prove that St. Domingo, having declared herself independent, and so far maintained it by arms, must be treated by other nations as such, in fact, and entitled to maintain the same intercourse with the world, as is maintained by other belligerent nations, addresses himself to sovereigns, not to courts. It is for governments to decide, whether they will consider St. Domingo as an independent nation; and till such decision is made, or France shall relinquish her claim, courts must consider the ancient state of things as remaining unaltered, and the sovereign power of France over the colony as still subsisting." In that case, the arguments urged in behalf of these

appellants, were stronger than when applied to this case; because in that, the dependence or independence of St. Domingo, was only incidentally involved; whereas, in this, the court is called upon, in construing an act of congress, to decide directly, that she is independent; for, if not so, then, the case is clearly within the law. The authority of the opinion just quoted, can lose nothing of its weight, from the circumstance, that, at the time when the vessel in that case was seized and condemned, the city of St. Domingo was in possession of the French; and that no efforts have been made, since its surrender to the arms of Great Britain and Spain, to recover the possession of the island, or any part of it. The superior maritime strength of Great Britain, accounts for this circumstance, and precludes all presumption of an implied abandonment by France, of her claim of sovereignty over the island. In the words of the chief justice, in the case quoted, "France has not relinquished her claim, nor has the government of the United States acknowledged the independence of the island."

One of the counsel for the appellants, sensible of the difficulty of clearing this case from the authority of Rose v. Himely [supra], endeavored to avoid it, by considering the island of St. Domingo as a conquered country, belonging first to Great Britain, and by her ceded to Spain. But this ground is as difficult to be maintained as the other; because, it was never yet pretended, that the conquest of a town, or even of a province, divested the original sovereign of more than the country which had submitted to the conqueror; and consequently, no other part of the island passed by the surrender into the hands of Great Britain and Spain, but the town of St. Domingo; and even that is now possessed by the blacks. We are inclined, indeed, to think, that if the whole island had submitted to the arms of Great Britain and Spain, and had by those powers been afterwards surrendered to the blacks, the rights of France would have revived; since the conqueror gains nothing but a temporary right of possession and government, until a pacification; and cannot, by any transfer in the mean time, impair the rights of the former sovereign. But, admitting the soundness of the arguments urged by the appellant's counsel, and that they stood uncontroverted by the decision in Rose v. Himely; still, we apprehend, that in relation to the island of St. Domingo, they would be inapplicable. The court is called upon to construe an act of congress, and to say, whether, within the meaning of the legislature, this island was to be considered as a dependence of France? Although there is nothing in the law itself, to decide this point, yet it is not improper to refer to the acts of our government, in relation to this island, in order to discover the light in which congress viewed it. In pursuing this investigation, we deem it unnecessary to go fur-

ther back into the revolution of St. Domingo, than to the 8th of July, 1801, when a constitution was framed by the people of this island, which was subsequently administered by Toussaint, as governor, and captain-general, under the French government; the supremacy of which, was repeatedly acknowledged by him, as chief of the colonial government. Subsequent to that period, a civil war raged between this colony and France, which was carried on with various success until July 1809, when, by the surrender of the city of St. Domingo, the French army was entirely expelled the island; which has ever since remained in the possession of the blacks, arrayed under different chiefs, contending with each other for the sole command. Previous, however, to this forced abandonment by France, this island was, in 1804, declared by the people to be independent; and the supreme executive power was placed in the hands of Dessalines, with the title of governor-general.

Let us now see what has been the conduct of our government in relation to this island, since the period when it was claimed by France, as a colony, and acknowledged as such, by the colony. On the 28th of February 1806 [2 Stat. 351], congress passed a law to suspend the commercial intercourse between the United States and such parts of the island of St. Domingo, as were not in the possession, and under the acknowledged government of France; which was continued in force until the 4th of March 1808. In the mean time, however, viz. in December 1807, the embargo laws, interdicting the commerce of the United States with all foreign nations, were passed, and consequently, rendered a further continuance of the former law unnecessary. This general interdiction of commerce continued until March 1809, when the embargo laws were repealed, except as to England and France; and a non-importation law, as to those nations, their colonies, and dependencies, and places within their actual possession, was enacted; to take effect from the 20th of May following; which continued in force against France until a late period.

When the non-intercourse law passed, in February 1806, the island of St. Domingo was in a state of open public war with France; having declared herself independent, framed a constitution of government, and shown herself able to maintain that independence. As an independent nation, the United States had an unquestionable right to carry on a commercial intercourse with that island. The attempt of any foreign nation to interdict such commerce, and still worse, a demand upon the government of the United States, to enforce such prohibition by law, would have been an insult, to which no nation ought, and to which our government most certainly would not have submitted. But it is well known, that the law of 1806, was passed in consequence of a remonstrance of the French government, made up-

on that of the United States, through her minister. The United States were at liberty to acknowledge the independence of St. Domingo, and to treat her as a sovereign power, or to refuse such acknowledgment, and to consider her as a colony and dependence of France. We view the law of 1806, under the circumstances which produced it, as a clear acknowledgment of the sovereignty of France over the island, which no subsequent act of our government, has in any respect impaired. When congress, therefore, by the law on which this information is founded, interdicted the importation into the United States, of goods, &c., from the colonies and dependencies of France, we feel ourselves compelled to say, that St. Domingo was considered by that body as included. So that the government has not only not acknowledged the independence of this island, but has very plainly declared the contrary.

As to the evidence, we shall only observe, that the depositions of Elisha Kane, James Handy, and W. Hunt, together with the acknowledgment of one of the claimants, in his petition to the secretary of the treasury, sufficiently prove, that the cargoes of both vessels, the Sea Nymph and the Emma, were imported from Port-au-Prince, to require exculpatory evidence from the claimants; which no where appears in the record. Sentence of the district court affirmed.